IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **BRENDEL DUPREE,** | ( | |
| *Plaintiff* | ( | |
| | ( | |
| v. | ( | Civil Action No. _____ |
| | ( | |
| **GSB SERVICES, LLC** | ( | |
| **[OPERATING AS SUBWAY]** | ( | |
| *Defendant.* | ( | |

**BRENDEL DUPREE'S ORIGINAL COMPLAINT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **COMES NOW**, BRENDEL DUPREE ("Plaintiff"), filing this *Original Complaint* against GSB Services, LLC (Operating as Subway). Plaintiff alleges Defendant has violated several laws within Texas and would show the court the following in support:

### A. NATURE OF THE ACTION

1.   This action is brought to remedy gender and pregnancy discrimination, Family Medical Leave Act interference and retaliation, and retaliation under Title VII of the Civil Rights Act and the Texas Labor Code.

### B. JURISDICTION & VENUE

2.   This Court has jurisdiction over this case pursuant to 28 U.S.C §§ 1331 (federal question) and 1343 (civil rights). Venue in this Court is appropriate pursuant to 42 U.S.C § 12117 (a), 42 U.S.C. § 2000E-5 (f)(3), and 28 U.S.C. § 1391, because the employment practices involved in this dispute occurred in Houston Texas, and thus venue is proper in the Southern District of Texas.

### C. ADMINISTRATIVE PROCEEDINGS

**2.** Plaintiff timely filed a charge of discrimination against Defendant(s) with the Texas Workforce Commission-Civil Rights Division ("TWC-CRD") and the Equal Employment Opportunity Commission ("EEOC"). Plaintiff was mailed the Right to Sue on or about September 8, 2016. Plaintiff filled this complaint within 90 days of receiving the "Right to Sue" letter. A copy of the notice is attached as **Exhibit "A"**.

### D. PARTIES

**3.** <u>Plaintiff.</u>  BRENDEL DUPREE ("Plaintiff") is an individual who is a citizen of the State of Texas. At all times material to this lawsuit, Plaintiff was an at-will employee of the Defendant.

**4.** <u>Defendant.</u>  a. GSB Services LLC, (Operating as Subway), was established in 2011, as a service provider to GS Beaumont Enterprise, LP and BMT Sub, Inc, an owner of Subway Franchise locations in southeast Texas. Subway is a American fast food restaurant franchise with locations in Houston and the surrounding areas, is part of a privately held corporation founded in Lumberton, TX.

**5.** <u>Vicarious Liability</u>**.** Whenever in this Petition it is alleged that Defendant committed any act or omission, it is meant that the Defendant's officers, directors, affiliates, subsidiaries, partners, agents, servants, or employees committed such act or omission and that at the time such or omission was committed, it was done with the full authorization, ratification or approval of Defendant or was done in routine normal course and scope of their agency and employment as Defendant's officers, directors, affiliates, subsidiaries, partners, agents, servants, or employees.

### E. FACTUAL BACKGROUND

**6.** Plaintiff brings this lawsuit seeking equitable relief, compensatory damages, lost wages, reinstatement of lost benefits, mental anguish damages, exemplary damages, attorney's fees, expert witness fees, taxable costs of court, pre-judgment and post-judgment interest related to Defendant's

retaliation and wrongful termination of Plaintiff for reporting violations of law.

7.     Plaintiff, an African-American female, worked as a serve for GSB SERVICES, LLC (Operating as Subway) at 115 S. LHS Drive No. 57, Lumberton Texas 77657 beginning on or about 2010.. Plaintiff was eventually promoted to Manager for said Subway Franchise.

8.     <u>GSB SERVICES, LLC (Operating as Subway)</u>. Defendant is an "employer" as defined under Title VII of the Civil Rights Act of 1964 and the Texas Commission on Human Rights Act ("TCHRA"), employing more than fifteen "employee(s)," as that term is defined in the TCHRA, during the times relevant to the matters upon which this lawsuit is based.

9.     On or about August 2015, Plaintiff informed area manager and her supervisor, Mr. James Wallace, that she was pregnant. Mr. Wallace questioned Plaintiff whether her pregnancy would interfere with her ability to work. Plaintiff informed Mr. Wallace that her pregnancy would not interfere with her ability to work.

10.    During work, while Plaintiff was pregnant, Mr. James Wallace asked Plaintiff to go into the back of the storefront to assist him. When asked why Mr. Wallace chose Plaintiff, Mr. Wallace jokingly responded that Plaintiff was the employee most suitable in assisting him in the back since nobody would think the two were "up to something" as Plaintiff was already pregnant. .

11.    On or about February 11, 2016, Plaintiff was assigned to work at the Subway franchise until 5:00pm. On that day, however, the store was understaffed and the employee set to come in at 2:00pm to finish the evening shift failed to appear for work. As manager, Plaintiff stayed at work beyond 5:00pm and was expected to stay until 10:00pm when the store closed. However, Plaintiff went into pre-mature labor and was admitted to St. Elizabeth Hospital.

12.    Upon her admission to St. Elizabeth Hospital, Plaintiff was stabilized and ordered to rest and recover over the course of the weekend. Although Plaintiff was scheduled to work her usual shift over the weekend, Plaintiff followed her doctor's recommendations and chose to return to work the

following the Monday.

13.     Upon her return to work, Plaintiff learned that she had been demoted and was forced to sign paperwork promoting one of the storefront's employees to new manager.

14.     Plaintiff informed Mr. Wallace that she would also require temporary leave in preparation for her delivery and that said leave would end six weeks after her delivery.

15.     Plaintiff 's request for temporary leave was denied.  During this time period, Plaintiff learned her paychecks had been drastically cut down to $8.00 an hour and that her $8.00 an hour pay rate had come into effect while she had been admitted to St. Elizabeth Hospital which was prior to her demotion.

16.     In the same month of February 2016, after Plaintiff's request for temporary leave was denied, Plaintiff filed an Charge of Discrimination against GSB Services, LLC with the Equal Employment Opportunity Commission ("EEOC").  In her complaint, Plaintiff alleged that GSB Services, LLC had discriminated against her due to her pregnancy.

17.     In addition, Plaintiff discovered that Mr. Wallace had a habit of changing Plaintiff's rate of pay whenever Ms. Plaintiff was out of the store.  On two occasions, first when Plaintiff took an absence from work to attend her cousin's funeral and a second time when Plaintiff took maternity leave, Plaintiff noticed that Mr. James Wallace had again cut her paychecks down to $8.00 an hour.

18.     On or about March 23, 2016, Plaintiff received orders from her doctor to temporarily stop working.  Plaintiff informed Mr. Wallace of her doctor's order.  Mr. Wallace asked Plaintiff to keep working up until the expected date of her delivery.  Furthermore, Mr. Wallace informed Plaintiff that she would be allowed to continue working at the Subway franchise but that if she received "one more write-up" she would be terminated from employment.

19.     On or about April 11, 2016, Plaintiff began to go into pre-mature labor and was rushed to St. Elizabeth Hospital.

20.     On or about April 12, 2016, Plaintiff gave birth to her child.  During that time period, Plaintiff

requested that she be granted temporary leave in accordance with the Family and Medical Leave Act of 1993.

21.     However, rather than address Plaintiff's request, Plaintiff's supervisor and GSB Services personnel chose to avoid responding to Plaintiff's request. By not addressing Plaintiff's request for FMLA leave, GSB Services, LLC effectively denied Plaintiff's request for FMLA leave.

22.     In June of 2016, Plaintiff was cleared and released back to work. On or about June 21, 2016, GSB Services, LLC, terminated Plaintiff from her employment.

### F. COUNT ONE – DISCRIMINATION ON THE BASIS OF SEX / PREGNANCY IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE & TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 IN ACCORDANCE WITH THE PREGNANCY DISCRIMINATION ACT OF 1978

23.     Plaintiff hereby adopts by preference each and every paragraph of the Facts and allegations stated in this Original Petition as if fully and completely set forth herein.

24.     Plaintiff's manager and supervisor subjected her to several sorts of employment actions not required of similarly situated personnel who were not pregnant. Moreover, Plaintiff was denied temporary leave and a decrease in her hourly pay. Plaintiff was uncomfortable in her work environment and the discomfort led to an episode of pre-mature labor that required hospital stabilization. Plaintiff, a pregnant woman, was told by her manager and supervisor that she should was most suitable in assisting him in the back since nobody would think the two were "up to something," implying sexual activity, as Plaintiff was already pregnant.

25.     Defendants' actions made working conditions for Plaintiff so intolerable that Plaintiff was forced to file complaints with management and an EEOC Charge of Discrimination. *See* Ex. B.

### G. COUNT TWO – FAMILY MEDICAL LEAVE ACT ("FMLA") INTERFERENCE

26.     Plaintiff claims that she was entitled to time from work under the FMLA, and that Defendant interfered with, restrained, or denied her entitlement to that time off. Defendant denies Plaintiff's claims.

27.     It is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA.

28.     FMLA rights include requesting or taking leave under the statute; having the employer maintain certain employment benefits during the leave; once leave is completed, being restored to the position the employee held when the leave began, or to a position that has equivalent employment benefits, pay, and other terms and condition.

29.     An employee is eligible to take leave if, when the leave began, she:

   a. had been employed by the employer for at least 12 months; and

   b. worked at least 1,250 hours during the previous 12-month period.

30.     If eligible, an employee is entitled to take up to 12 weeks of leave in any 12-month period:

   a. Because of the birth of the employee's child and to care for that child;

   b. because of the placement of a child with the employee for adoption or foster care;

   c. to care for the employee's spouse, son, daughter, or parent, if that person had a "serious health condition"; because of a "serious health condition" that made the employee unable to perform the functions of her position; or

   d. because of any qualifying exigency arising out of the fact that the employee's spouse or a son, daughter, or parent is on covered active duty (or has been notified of an impending call or order to covered active duty) in the Armed Forces

31.     A "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either (a) inpatient care in a hospital, hospice, or residential medical care facility, or (b) continuing treatment by a health care provider.

32.     A "health care provider" includes a doctor of medicine, doctor of osteopathy, podiatrist, dentist, clinical psychologist, optometrist, nurse practitioner, nurse midwife, or clinical social worker, so long as the provider is licensed to practice in the state and is performing within the scope of his or

her practice.

33. A "qualifying exigency" arises when an employee's spouse, son, daughter, or parent is on covered active duty in the Armed Forces, or has been notified of an impending call or order to covered active duty. Categories of "qualifying exigencies" include short-notice deployment, military events and related activities, childcare and school activities, financial and legal arrangements, counseling, rest and recuperation, post-deployment activities, and additional activities.

34. An employee is required to give notice to the employer indicating when [he/she] requires FMLA leave.

35. If the need for leave was foreseeable—that is, the leave was planned or expected—the employee must give the employer at least 30 days' notice before the leave was to begin, except that if the date of the treatment or birth required the leave to begin in less than 30 days, the employee was required to provide such notice as was practicable.

36. If the need for leave was *not* foreseeable—that is, the leave was unplanned or unexpected— the employee must give the employer notice as soon as was practicable under the facts and circumstances.

37. "As soon as practicable" generally means that an employee must give notice within the time prescribed by the employer's usual notice requirements for such leave. In extraordinary circumstances when it is not feasible for the employee to give such notice, someone such as a family member should do so.

38. To give her employer proper notice of the need for FMLA leave, an employee is *not* required to expressly refer to or name the FMLA. The employee need provide the employer only enough information to put it on *notice* that leave was needed because of a serious health condition, birth, et cetera.

### H. COUNT THREE – FAMILY MEDICAL LEAVE ACT ("FMLA") RETALIATION

39. To succeed in this case, Plaintiff must prove by a preponderance of the evidence that she was entitled to time off from work because:

   a. Plaintiff had a "serious health condition" that made her unable to perform the functions of her employment position,

   b. the birth of Plaintiff's child and to care for that child,

40. Plaintiff gave Defendant proper notice of the need for time off from work for one or more of these reasons; and Defendant interfered with, restrained, or denied Plaintiff's entitlement to take time off from work. It does not matter whether Defendant intended to violate the FMLA. If Defendant denied Plaintiff a right to which she was entitled under the FMLA, then Plaintiff should receive a favorable finding upon this issue. *See Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999); *see also Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) (the plaintiff must have been harmed by violation).

41. It is unlawful for an employer to retaliate against an employee for engaging in FMLA-protected activity. FMLA-protected activity includes, but is not limited to, requesting or taking leave, having the employer maintain certain employment benefits during leave, once leave is completed, seeking restoration to the position the employee held when leave began or to a position with equivalent employment benefits, pay, and other terms and conditions of employment.

42. To prevail, Plaintiff must prove by a preponderance of the evidence that:

   a. she engaged in FMLA-protected activity;

   b. Defendant terminated employee for requesting to take part in the FMLA; and

   c. Defendant would not have terminated Plaintiff but for her engaging in FMLA-protected activity.

43. Plaintiff *does not* have to prove that her FMLA-protected activity is the *only* reason Defendant

terminated her. But Plaintiff must prove that she would not have been terminated in the absence of her FMLA-protected activity. Even in the face of disbelieve about the reason Defendant alleges for its decision, it may be inferred that Plaintiff's termination resulted from her FMLA-protected activity.

44.     Plaintiff claims that she would not have been terminated by Defendant but for her engaging in FMLA-protected activity.

### I. COUNT FOUR – RETALIATION IN VIOLATION OF CHAPTER 21 OF THE TEXAS LABOR CODE & TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

45.     In addition, Defendants retaliated against Plaintiff for engaging in her right to use resources designed to deter unlawful employment actions.

46.     Plaintiff hereby adopts by preference each and every paragraph of the facts and allegations stated in this Original Petition as if fully and completely set forth herein. Plaintiff alleges that she was retaliated against for filing a Charge of Discrimination with TWC and EEOC.

47.     The Texas Labor Code prohibits an employee from being punished for reporting her supervisor. Plaintiff was repeatedly discriminated against for her pregnancy and sex. Defendants responded to Plaintiff's outcry by calling her stripping her of work hours and denying her request for FMLA leave. Plaintiff acted within her right to speak to those in management positions. After these acts, Defendants retaliated against Plaintiff.  *See* Texas Labor Code § 21.055.

### J. COUNT SIX – WRONGFUL DISCHARGE

48.     In addition, Defendants wrongfully terminated Plaintiff.

49.     Plaintiff hereby adopts by preference each and every paragraph of the facts and allegations stated in this Original Petition as if fully and completely set forth herein.

50.     Defendant made working conditions for Plaintiff unbearable because she acted in good faith to address an issue regarding adverse employment actions taken by her supervisor and manager against her. Plaintiff can show that (i) she engaged in a protected activity; (ii) was forced to leave her job; and

(iii) a causal link exists between the protected activity and the termination.

**51.** Defendants' actions are in violation of Chapter 21 Texas Labor Code § 21.055 pertaining to retaliation and common law.

**52.** Plaintiff suffered actual damages and loss for which she herein sues.

## K. Reservation of Rights

**53.** Plaintiff reserves the right to bring additional causes of action against the Defendant(s) and to amend the Petition as necessary.

## L. Jury Demand

**54.** Plaintiff demands a trial by jury.

## M. Preservation of Evidence to Defendants

**55.** Plaintiff requests and demands the Defendants to preserve and maintain all evidence pertaining to any claim or defense related to the facts and allegations upon which this lawsuit or damages are based. Plaintiff's Demand Letter of Preservation of Evidence to Defendant is attached to this Petition as **Exhibit. A**. This letter, *inter alia*, provides notice that Defendants must immediately take steps to issue a litigation hold and preserve all electronically stored information ("ESI") as well as physical documents, no matter the storage media, device, or location in possession and control of Defendants or third parties. This request also demands Defendant cease the destruction and alteration of all such items.

## N. Prayer

**56.** **WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that Defendants be cited to appear and answer, and that upon trial of this cause, have judgment against Defendant for:

    (1)    all actual and economic damages suffered by Plaintiff,

    (2)    reinstatement,

    (3)    lost back pay,

    (4)    lost front pay,

(5)   compensatory damages,

(6)   liquidated damages (per FMLA),

(7)   prejudgment and post-judgment interest at the legal rate,

(8)   costs of court,

(9)   attorney's fees,

(10)  all expert fees, as allowed by law,

(11)  and such other relief, both at law and in equity, deemed proper by this Court.

          **Respectfully submitted,**

          *[signature]*

          **DASEAN A. JONES**
          State Bar No. 24078750
          712 Main Street
          Suite 2450
          Houston, Texas  77002
          832.224.6740 main
          832.827.3983 fax
          djones@texasjoneslaw.com

          **ATTORNEY FOR PLAINTIFF,**
          **BRENDEL DUPREE**

**Exhibit A to Petition**



712 Main Street, Suite 2450
Houston, Texas 77002

DaSean Jones
832.224.6740 main
832.827.3983 fax
djones@texasjoneslaw.com

Friday, November 11, 2016

**SENT VIA ELECTRONIC MAIL**:
GSB Services, LLC.
12660 South Kirkwood Road
Stafford, Texas 77477
Tele: (409)755-7827

Re:     **Preservation of Evidence/*Spoliation Notice;*** *Brendel Dupree v. GSB Services, LLC;* TWC Claim No. 13-471626-6

Dear GSB Services, LLC:

This letter requests your immediate action to preserve electronically stored information that may contain evidence important to the above legal matter. As you are aware, our law firm represents Brendel Dupree in the above legal matter in which GSB Services, LLC, is named as a defendant.

 Briefly, the matter involves GSB Services, LLC (Operating as Subway) and its employees discriminatory actions against Brendel Dupree while she was employed at Subway. This notice applies to GSB Services, LLC on- and off-site computer systems and removable electronic media,  all computer systems, services, and devices (including all remote access and wireless devices) used for GSB Services, LLC] overall operation. This includes, but is not limited to, employment records, timesheets,  e-mail and other electronic communications; electronically stored documents, records, images, graphics, recordings, spreadsheets, databases; calendars, system usage logs, contact manager information, telephone logs, internet usage files, deleted files, cache files, user information, and other data.

Further, this notice applies to archives, backup and disaster recovery tapes, discs, drives, cartridges, voicemail and other data. All operating systems, software, applications, hardware, operating manuals, and electronically stored information must also be preserved.

The importance of immediate action cannot be overstated. Electronically stored information is easily corrupted, altered, and deleted in normal daily operations. Even booting a drive, running an application, or reviewing a document can permanently alter evidence.

This preservation notice covers the above items and information between the following dates: **2010- February 2016**.

Current law and rules of civil procedure clearly apply to the discovery of electronically stored information just as they apply to other evidence, and confirm the duty to preserve such information for discovery.

GSB Services, LLC and its officers, employees, agents, and affiliated organizations must take all reasonable steps to preserve this information until this legal matter is finally resolved. Failure to take the necessary steps to preserve the information addressed in this letter or other pertinent information in your possession or control may result in serious sanctions or penalties.

Further, to properly fulfill your preservation obligation, stop all scheduled data destruction, electronic shredding, rotation of backup tapes, and the sale, gift or destruction of hardware. Notify all individuals and affiliated organizations of the need and duty to take the necessary affirmatives steps to comply with the duty to preserve evidence.

                                                    Very Respectfully,

                                                    _____

                                                    DaSean A. Jones